CENTRAL OHIO LIGHT & POWER CO. *v.* HIXENBAUGH ET AL.

(Decided December 9, 1935.)

*Mr. Walter S. Jackson,* for plaintiff in error.
*Messrs. Klinger & Klinger,* for defendants in error.

LLOYD, J. By deed dated November 2, 1900, and recorded March 16, 1901, The Western Ohio Railway Company, its successors and assigns, acquired from W. H. Hixenbaugh, and wife, Etta, a strip of land 30 feet wide "off from the east side" of certain land in Shawnee township, Allen county, "containing 94/100 acres, more or less," and extending southward to the north line of the right of way of The Chicago & Erie Railway Company, upon the following express conditions:

1. The premises hereby conveyed are to be used for electric *or* street railroad purposes.

2. If not so used within two years from its date, or if used for any other than for electric *or* street railroad purposes, or after being so used shall be abandoned or remain unused for the purposes aforesaid, then the said premises and the title thereto shall revert and be revested in grantors, their heirs and assigns, without further act or deed.

3. As a part of the consideration therefor, the grantee, its successors and assigns, shall, at its or their own cost and expense, construct and maintain so long as they use and occupy same for electric or street railroad purposes, suitable crossings at all lanes, driveways or gateways along said premises.

4. Grantee, its successors and assigns, likewise shall construct and, so long as they occupy the premises for electric or street railway purposes, shall maintain a good and substantial fence with necessary gates suitable to turn stock between said premises and adjoining private property.

On June 16, 1903, Hixenbaugh and wife conveyed to

the same grantee a strip of land 6 feet wide west of and adjoining the 30-foot strip described in the deed of November 2, 1900, this deed containing the same conditions as therein enumerated except that the premises conveyed are to be used for electric street railroad purposes instead of for electric *or* street railroad purposes.

Until January 18, 1932, The Western Ohio Railway Company and its corporate successor, The Western Ohio Railway & Power Company, operated a railroad with electricity as its motive power over the property so conveyed, and until December 1, 1930, sold electrical energy for power and light purposes to various customers. Mr. Hixenbaugh testified that he knew the company was in the business of selling electrical energy for power and light purposes during 1905 and continuously thereafter. On October 11, 1904, Etta Hixenbaugh—by warranty deed in which her husband William H. Hixenbaugh, the defendant in error herein, released dower—conveyed all of the land, of which that conveyed to The Western Ohio Railway Company had been a part, to Joseph D. Tam for a named consideration of $20,000, excepting therefrom "thirty-one feet off the east side thereof." Etta Hixenbaugh died testate on June 5, 1910, devising all of her property to her husband. On December 1, 1930, The Western Ohio Railway & Power Company conveyed to the Central Ohio Light & Power Company all transformers, lightning arresters, switching and meter equipment and other property used by it in its electric light and power business, and "all rights of way and easements now owned or hereafter acquired to the extent necessary for the construction, operation and maintenance by the company" of its electric transmission lines, reserving the right to use the same for railway purposes so long, and only so long, as it should continue so to do. The operation of the railroad con-

tinued until January 18, 1932. Since December 1, 1930, the Central Ohio Light & Power Company has occupied and used the land in question for the purpose of transmitting and distributing electrical energy, but never has been engaged in operating a railroad thereon.

On August 14, 1934, Hixenbaugh filed a petition in the Court of Common Pleas against the Central Ohio Light & Power Company as defendant, claiming therein that he was entitled to the immediate possession of the 36-foot strip of land theretofore conveyed to The Western Ohio Railway Company by himself and wife on November 2, 1900, and June 16, 1903, and claiming also that he should be awarded damages for its unlawful retention by the Central Ohio Light & Power Company since the date of the deed to it from The Western Ohio Railway & Power Company. The answer to this petition is in form of a general denial, with an affirmative allegation that the Central Ohio Light & Power Company is in the lawful possession of the premises in question. In the trial court a verdict was returned finding Hixenbaugh entitled to the possession of the 31-foot in width strip of land, and awarded to him $1,112.50 as damages for the unlawful possession thereof. From the judgment entered thereon, error is prosecuted to this court.

For some reason, Etta Hixenbaugh excepted from the lands conveyed to Tam only 31 feet of the 36-foot strip described in the petition of Hixenbaugh, and the question presented to this court is whether Hixenbaugh is entitled to the possession of the 30-foot strip conveyed to The Western Ohio Railway Company on November 2, 1900, plus one foot of the 6-foot strip conveyed to it on June 16, 1903. The basis of Hixenbaugh's claim is that the conveyance to the railroad company restricted the use of the land solely to street railroad purposes, and that the Central Ohio Light &

Power Company having acquired and taken possession of it for a distinctly different use and purpose is a trespasser thereon.

The Central Ohio Light & Power Company contends that the deed of Mrs. Hixenbaugh dated November 2, 1900, contemplated and gave the right to use the 30-foot strip of land thereby conveyed not only for the transmission of such electricity as was incidental and necessary in the operation of the railroad, but also for the transmission of electricity for light and power to purchasers thereof. If the intent of the original grantor was to convey to The Western Ohio Railway Company, its successors and assigns, the premises for power and light transmission of electricity generally, as well as for the operation of its railroad, then the conditions as to fencing, crossings, etc., are not inconsistent therewith since they would continue to be necessary as long as the railroad was operated, and had Mrs. Hixenbaugh continued thereafter to own the adjoining lands, might still have been appropriate conditions for the protection and convenience of herself and her grantee, if not excepted from but conveyed as part of the adjoining land, subject merely to the right and interest of The Western Ohio Railway Company, its successors and assigns, therein.

At the dates of the Hixenbaugh conveyances to The Western Ohio Railway Company, William Hixenbaugh had only a dower interest in the lands thereby conveyed, and their conveyance to Tam did not reserve any of the theretofore granted premises, but excepted therefrom 31 feet thereof, and any title Hixenbaugh has therein vests in him as the devisee of his deceased wife. The grant in each of the right of. way deeds is to the grantee, its successors and assigns, so if the grantor in the deed to the Central Ohio Light & Power Company had the right to use the premises for both purposes, separately or conjunctively, then

it now is privileged to occupy and use them for its present purpose.

There is no better guide to the construction of a contract than that given thereto by the acts and conduct of the parties themselves. The Western Ohio Railway Company from approximately the beginning of its use thereof, with the knowledge and acquiescence of the Hixenbaughs, continuously used the premises not only for the purpose of its railroad but also for the transmission of electrical energy to various purchasing persons and corporations. If this were not a contemplated and intended use, the Hixenbaughs could have taken advantage thereof long years ago. They chose not to do so, and by their acquiescence therein have told us what right and interest they considered their deeds conveyed. If, as contended by Hixenbaugh, the words "electric or street railroad purposes," are identical in meaning with the phrase "electric street railroad purposes," then The Western Ohio Railway Company, its successors and assigns, became trespassers from the initial occupancy thereof, because of the breach of the contractual limitation as to the purpose for which the premises might be used. If the claimed construction were correct, then under the express conditions of the deed the title to the occupied premises revested in the Hixenbaughs "without further act or deed" immediately upon its first use for the inhibited purpose.

No word of objection or protest is found in the record to the continued double use of any part of the granted premises through all of the passing years until commencement by Hixenbaugh of his action in the Court of Common Pleas.

There is another principle of law applicable to all of the property in question. For more than twenty-one years The Western Ohio Railway Company, its successors and assigns, have had the continuous, open,

notorious and exclusive occupancy and possession of this 31-foot wide and 1420-foot long strip of land, not only for the uses and purposes incidental and necessary to the operation of the railroad, but also for the purposes for which it has been occupied and used since its acquisition by the Central Ohio Light & Power Company, and the admitted facts are that during all ot this time, Hixenbaugh, and his wife previous to her death, knew thereof and acquiesced therein.

This court concludes that the deed of November 2, 1900, contemplated, intended to give, and did give to the grantee, its successors and assigns, the land therein described, for both of the purposes, separately or together, for which the same has been used; but that regardless of the construction placed upon the wording and conditions of that deed, adverse possession of the 31-foot strip of land in question by the Central Ohio Light & Power Company, and its occupying predecessors, precludes any present claim of Hixenbaugh thereto.

The judgment of the Court of Common Pleas is reversed and final judgment is rendered for plaintiff in error.

*Judgment reversed.*

OVERMYER and CARPENTER, JJ., concur.

JUDGES LLOYD, OVERMYER and CARPENTER, of the Sixth Appellate District, sitting by designation in the Third Appellate District.